**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| **ANN M. MEMMER,** | ) | **CASE NO.   4:06 CV0346** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PETER C. ECONOMUS** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **INDALEX, INC.,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| | ) | |
| **Defendant.** | ) | |


This matter is before the Court upon Defendant's Motion for Summary Judgment.  (Dkt. # 31).

**I.  BACKGROUND**

Defendant, Indalex, Inc. ("Indalex") employed Plaintiff, Ann Memmer ("Memmer") from 1993 to 2005.  (Dkt. #11, Ex. 1, Affidavit of Ann Memmer ("Memmer Aff.") ¶ 2).   Indalex and Local 4564 of the United Steel Workers of America are signatories to a collective bargaining agreement.  (Dkt. #8, Ex. 1, Basic Labor Agreement).  During her time at Indalex, Memmer was a bargaining unit member and worked in the paint department, a bargaining unit position.  (Dkt. #8, Ex. 2, Affidavit of Patrick Callihan ("Callihan Aff.") ¶ 4).  Accordingly, Memmer's terms and

1

conditions of employment were governed by the collective bargaining agreement. (Id.).

In 1998, Memmer suffered an injury at work while lifting banding wires.  (Memmer

Aff. ¶ 6).  As a result of the injury, Memmer filed a claim for workers' compensation

benefits.  (Id. ¶ 7).  The claim was approved and Memmer had an open workers'

compensation claim that continued until the date of her termination.  (Id.).  In October

2003, Memmer applied for and was granted FMLA leave for three weeks to care for her

sick mother. (Memmer Depo, at 354-356).  Beginning June 9, 2004, and ending

October 1, 2005, Memmer was granted intermittent FMLA leave to care for her mother

and treat her own back condition. (Memmer Depo, at  357-362).

On July 10, 2005, Indalex terminated Memmer's employment.  Her termination

was based on the observations of Alan Michael ("Michael"), Indalex's quality control

manager, who reported seeing Memmer smoking and using a cell phone in the

prohibited areas.  (Callihan Aff. ¶ 5; Memmer Aff. ¶ 12).  Both actions were violations

of safety regulations enumerated in Indalex's code of conduct.  (Callihan Aff. ¶ 5;

Memmer Aff. ¶ 12).  Prior to presenting the notice of termination to Memmer, Michael

sought the approval of his supervisor, Indalex's Operations Manager, Patrick Callihan

("Callihan").  (Callihan Aff., at ¶ 3).  After reviewing the notice and speaking with

Michael, Callihan conducted his own internal investigation and determined that the

decision to terminate Memmer was final.  (Callihan, Sup. Aff., at ¶ 3).

On July 19, 2005, Memmer filed a grievance over her discharge.  (Dkt. #8, Ex.

3).  Pursuant to the grievance policy, a meeting was held which was attended by

2

Memmer, Dean Rueschman ("Rueschman"), Indalex's Human Relations Manager, and Matt Novosel, Memmer's union president.  The meeting concluded without any change to Memmer's termination status.  (Dkt. #8, Ex. 4).

A second meeting took place on July 13, 2005, where Memmer was offered a Last Chance Agreement ("LCA") which would have reinstated her in exchange for being placed on a one year probationary period.  After being provided with six days to consider it, Memmer decided against signing the LCA. (Memmer Depo, at 331-333). On July 19, 2005, Memmer filed a third grievance over her discharge. (Memmer Depo, at 332-333).  The Union and Indalex affirmed the decision to discharge Memmer and declined to pursue Memmer's case into arbitration. (Memmer Depo, at 332-333).

On January 5, 2005, Memmer commenced the instant action against Indalex by filing a complaint in the Trumbull County Court of Common Pleas.  (Dkt. #1, Ex. A, Complaint).  The Complaint alleges two counts: (1) pursuant to Ohio Revised Code § 4123.90, unlawful retaliation by Indalex against Memmer for pursuing her worker's compensation claims; and (2) pursuant to the Family Medical Leave Act, 29 U.S.C. §§ 2601, et seq., unlawful discrimination by Indalex against Memmer.[1]  On February 2, 2006, Indalex removed the action to this Court.  (Dkt. #1).  On December 1, 2006, the instant motion ensued.  (Dkt. #31).

---

[1]

In her Complaint, Plaintiff also alleged wrongful discharge pursuant to Ohio tort law. (Dkt. #1).  However, these claim were dismissed by the Court on April 17, 2006. (Dkt. # 13).

3

## II.    STANDARD OF REVIEW

Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56 (c). "Rule 56 (c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In considering such a motion, the court must review all of the evidence in the record. See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); accord Graham-Humphreys v. Memphis Brooks Museum of Art, Inc., 209 F.3d 552, 556-57 n.7 (6th Cir. 2000). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52.

"A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with

4

the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex</u>, 477 U.S. at 323 (quoting FED. R. CIV. P. 56 (c)).  The movant meets this burden "by 'showing' - that is, pointing out to the district court - that there is an absence of evidence to support the nonmoving party's case." <u>Clayton v. Meijer, Inc.</u>, 281 F.3d 605, 609 (6th Cir. 2002) (quoting <u>Celotex</u>, 477 U.S. at 324-25).  The non-movant then "must set forth specific facts showing that there is a genuine issue for trial." <u>Anderson</u>, 477 U.S. at 250.

"The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" <u>Street v. J.C. Bradford & Co.</u>, 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting <u>Anderson</u>, 477 U.S. at 250).  "A mere scintilla of evidence is insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." <u>Anderson</u>, 477 U.S. at 250.

## III.  LAW AND ANALYSIS

### A.  FMLA Claims

The Family Medical Leave Act ("FMLA") entitles an eligible employee[2] to as

---

[2] The FMLA expressly incorporates into its provisions the Fair Labor Standards Act's ("FLSA"), 29 U.S.C. §§ 201-219 (1994), definition of "employee." <u>See</u> 29 U.S.C. § 2611(3) ("The terms 'employ', 'employee', and 'State' have the same meanings given such terms in subsections (c), (e), and (g) of section 203 of this title [the FLSA].").  The FLSA defines employee as "any individual employed by an employer."  29 U.S.C. § 203 (e)(1).  An "eligible employee" under the FMLA is an "employee" who "has been employed for at least 12 months by the employer with respect to whom leave is requested . . . ; and for at least 1,250 hours of service with such employer during the previous 12-month period."  29 U.S.C.

many as twelve weeks of unpaid leave in any twelve-month period . . . because of "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). There are two distinct theories for recovery on FMLA claims: inference claims and retaliation claims.  See Hoge v. Honda of America Mf., Inc., 384 F.3d 238, 244 (6th Cir. 2004).

The "entitlement" or "interference" theory pertains to the FMLA's creation of substantive rights.  If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a violation has occurred.  See 29 U.S.C. §§ 2615(a)(1) ("It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this title.").  The "retaliation" or "discrimination" theory arises from 29 U.S.C. § 2615(a)(2), which provides that "it shall be unlawful for any employer to discharge or in any manner discriminate against any individual for opposing any practice made unlawful by this title."  29 U.S.C. § 2615(a)(2).

### 1.    Interference Claim

In the instant matter, the Plaintiff avers in her Complaint that Indalex "interfered with the exercise of Plaintiff's rights under the FMLA by failing to approve qualified leave as FMLA."  (Dkt. # 1, Ex. 1).  At first blush, it appears that the Plaintiff seeks to pursue the "interference" theory for recovery.  However, the Plaintiff has filed a

_____

§ 2611(2)(A).

6

memorandum in opposition where she no longer alleges that Indalex failed to approve qualified leave as FMLA. (Dkt. # 33). Instead, Plaintiff asserts, "the mere fact that Memmer was not denied the right take FMLA leave does not establish Defendant's summary judgment in its favor." (Dkt. #33). To further confound the issue, the Plaintiff cites a portion of a Ninth Circuit case discussing the retaliation theory in support of her interference claim. See Batchelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1125 (9th Cir. 2001) (explaining that to prevail on a retaliation claim, *not an interference claim*, an employee "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor in the decision to terminate her") (emphasis added).

Nevertheless, a comprehensive review of the record reveals that Memmer cannot establish a FMLA interference claim. To succeed on a FMLA interference claim, the employee must demonstrate that:

(1)     she was an eligible employee entitled to FMLA benefits;
(2)     the employee gave the employer notice of her intention to take leave; and
(3)     the employer denied the employee FMLA benefits to which she was entitled.

Cavin v. Honda of Am. Mfg., Inc., 346 F.3d 713, 719 (6th Cir. 2003).

Memmer testified that she was granted intermittent FMLA leave every time she applied for it. (Memmer Depo, at 354-356, 357-362, 452-453, 460-461). Furthermore, Memmer testified that she never had any problems getting her FMLA leave approved

and that Indalex never interfered with her taking FMLA leave. (Memmer Depo, at 355, 357, 360-361, 365-367).  Memmer even went so far as to testify that her intermittent FMLA had been "pretty good" and it helped her out "a lot." (Memmer Depo, at 357).  Therefore, Memmer acknowledges that she cannot meet the third prong of an FMLA inference claim because she was never denied benefits.[3]  As a result, her FMLA interference claim fails as a matter of law.

### 2.    Retaliation Claim

Plaintiff also seeks to assert a FMLA retaliation claim.  To succeed on a retaliation claim, a plaintiff must demonstrate that her employer intentionally discriminated against her in the form of an adverse employment action for having exercised an FMLA right.  See Gibson v. City of Louisville, 336 F.3d 511, 513 (6th Cir. 2003).  The plaintiff may establish the elements of her FMLA retaliation claim by presenting direct or indirect evidence on intentional discrimination.[4]  See Gibson, 336

---

[3]  In her motion in opposition, Plaintiff applied the McDonnell-Douglas burden shifting framework to her FMLA interference claim.  Although at least one judge in the Southern District of Ohio has adopted a single framework for analyzing all FMLA claims, recent Sixth Circuit case law continues to distinguish between interference claims and retaliation claims.  Paxton, at 16-17, citing Hoffman v. Professional Med Team, 394 F.3d 414 (6th Cir. 2005);  Heady v. United States Enrichment Corp., 146 Fed. Appx. 766, 2005 WL 1950793 (6th Cir. 2005);  Deboer v. Musashi Auto Parts, Inc., 124 Fed. Appx. 387, 2005 WL 434526 (6th Cir. 2005).

[4] "[D]irect evidence is evidence that, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions.'" Johnson v. The Kroger Company, 319 F.3d 858, 865 (6th Cir. 2003), reh'g denied, No. 01-3432, 2003 U.S. App. LEXIS 8419 (6th Cir. Apr. 22, 2003) (quoting Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999)).  When presented with direct evidence of discrimination, the factfinder need not "draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members

F.3d at 513; Skrjanc, 272 F.2d at 315-16.  In the absence of direct evidence of the employer's intent to retaliate, the plaintiff must rely on the familiar McDonnell Douglas burden-shifting framework.  See Gibson, 336 F.3d at 513 (citing Skrjanc, 272 F.2d at 315).

Under McDonnell Douglas, a plaintiff bears the initial burden of establishing a *prima facie* case of FMLA retaliation.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973), as later clarified by Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-56 (1981); accord Gibson, 336 F.3d at 513.  The employer then must come forward and articulate a legitimate nondiscriminatory reason for the adverse employment action.  See McDonnell Douglas Corp., 411 U.S. at 802 (1973); Gibson, 336 F.3d at 513.  Upon such a showing by the employer, the plaintiff must come forward with evidence demonstrating that the employer's proffered reason was actually a pretext to conceal unlawful retaliation.  Id.  The plaintiff can demonstrate pretext by showing that the proffered reasons: (1) had no basis in fact; (2) did not actually motivate the employer's conduct; or (3) were insufficient to warrant the employer's action.  See Dews v. A.B. Dick Co., 231 F.3d 1016, 1021 (6th Cir. 2000) (citing Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1084 (6th Cir.

of the protected group." Johnson, 319 F.3d at 865 (citing Nguyen v. City of Cleveland, 229 F.3d 559, 563 (6th Cir. 2000)).  However, "[i]t is the rare situation when direct evidence of discrimination is readily available," therefore, "victims of employment discrimination [or retaliation] are permitted to establish their cases through inferential and circumstantial proof."  Kline v. Tennessee Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997) (citation omitted).

1994)).  See also Wheeler v. McKinley Enters., 937 F.2d 1158, 1162 (6th Cir. 1991).

"A plaintiff's *prima facie* case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully [retaliated]." Reeves, 530 U.S. at 153-54.  Nonetheless, "'[t]he ultimate burden of persuading the trier of fact that the defendant intentionally [retaliated] against the plaintiff remains at all times on the plaintiff.'" St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993) (quoting Burdine, 450 U.S. at 255 n.8).

### a.    *Prima Facie* Case

In order to establish a *prima facie* case of FMLA retaliation, the Plaintiff must demonstrate that: (1) she availed herself of a protected right under the FMLA; (2) she was adversely affected by an employment decision; and (3) there exists a causal connection between her exercise of a right under the FMLA and the adverse employment decision.  See Skrjanc, 272 F.3d at 314.  It is undisputed that Memmer meets the first and second prongs of her *prima facie* case; therefore, the Court shall proceed to the third prong– that is, whether a causal connection exists between the termination and the Plaintiff's request for FMLA leave.

Memmer's only evidence of the casual connection between her FMLA leave and her termination is Reuschman's statement, "I don't like the fact that you are on FMLA." (Memmer Depo, at 39).  Indalex submits that Reuschman's statement does not create the requisite causal connection because Reuschaman was not involved in the

10

investigation and decision to terminate Memmer. In contrast, Indalex submits evidence that the decision-makers- Michael and Callihan- lacked any awareness of Memmer's FMLA leave request when deciding to terminate her. (Michael Depo, 23-24; Callihan, Aff., at ¶ 7). Indalex also points out that Reuschman's statement allegedly occurred after Memmer was terminated on July 11, 2005.

The Court is cognizant that the McDonnell Douglas framework places a legally uncharacteristically low evidentiary burden on the Plaintiff at the *prima facie* stage. See, e.g., Christian v. Wal-Mart Stores, Inc., 252 F.3d 862, 870 (6th Cir. 2001); Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660-61 (6th Cir. 2000). Moreover, the Court recognizes that the United States Court of Appeals for the Sixth Circuit recently has expanded the scope of the "decision-maker" analysis to the knowledge held by other managerial employees such as Reuschman, who were well-aware of the Plaintiff's request for leave. See Johnson, 319 F.3d at 868 ("Although remarks made by an individual who has no authority over the challenged employment action are not indicative of discriminatory intent, the statements of managerial-level employees who have the ability to influence a personnel decision are relevant.") (Citation omitted). In light of the foregoing legal standards, as well as direct controlling authority stating that proximity satisfies the causation element of the *prima facie* case for an FMLA retaliation claim, the Court determines that the Plaintiff has met her *prima facie* burden.

11

### b.    Legitimate, Non-Discriminatory Reason

The Defendant now must come forward and articulate a legitimate, non-discriminatory reason for terminating the Plaintiff's employment.  <u>See</u> <u>McDonnell Douglas Corp.</u>, 411 U.S. at 802 (1973); <u>Gibson</u>, 336 F.3d at 513.  Indalex asserts that it terminated the Memmer's employment for safety violations.  <u>See</u> (Def.'s Mem in Support at 12); <u>see</u> <u>also</u> (Zarlenga Aff. ¶ 12; Def.'s Certif. ¶ 53).  Safety violations are intolerable under Indalex's code of conduct, and thus constitute a legitimate, non-discriminatory reason. (Memmer Depo, at Ex. H).

### c.    Pretext

The Plaintiff now must come forward with evidence demonstrating that Defendant's proffered reason is a pretext for unlawful retaliatory conduct. The Plaintiff may elect to demonstrate that the proffered reasons "(1) have no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) were insufficient to warrant the challenged conduct."  <u>Johnson</u>, 319 F.3d at 866 (internal quotation and citation omitted).  Memmer "must allege more than a dispute over the facts upon which [her] discharge was based."  <u>Braithwaite v. Timken Co.</u>, 258 F.3d 488, 494 (6th Cir. 2001).  She "must put forth evidence which demonstrates that the employer did not 'honestly believe' in the proffered non-discriminatory reason for its adverse employment action."  <u>Id</u>.

The first and third methods are straightforward factual attacks on the proffered

reason; however, the third option ordinarily consists of evidence that other employees, particularly employees not in the protected class, did not suffer the adverse employment action even though they engaged in substantially identical conduct as the plaintiff.  See Gray v. Toshiba American Consumer Prods., 263 F.3d 595, 600 (6th Cir. 2001).  The second option "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate the [adverse employment action]" but "attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant."  Manzer, 29 F.3d at 1084.

Memmer's memorandum in opposition pursues the first and third methods of demonstrating pretext.[5]  With respect to the first method – a factual challenge – Memmer denies that she was smoking and using her cell phone in an unauthorized area. (Dkt. # 33).  Memmer claims that her allegations are "supported by the testimony of Matt Novosel who stated that his investigation revealed that Memmer was in an area where cell phone use was appropriate."  (Pl.'s Mem. in Opp'n at 12).  The portions of

_____

[5] Memmer's memorandum in opposition appears to alternatively advance the second method of demonstrating pretext: that is, the Plaintiff "admits the factual basis underlying the employer's proffered explanation and further admits that such conduct *could* motivate dismissal, but attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant."  Johnson, 319 F.3d at 866 (internal quotations and citation omitted).  As the third option ordinarily consists of evidence that other employees, particularly employees not in the protected class, the Court shall proceed directly to the third method of proving pretext.  See Gray v. Toshiba American Consumer Prods., 263 F.3d 595, 600 (6th Cir. 2001).

Novosel's deposition cited by Memmer, however, merely suggest that he "*thought* that the area in which she was far away enough from the building... *until* I got some other stuff from Mr. Rueschman." (Novosel Depo, at 82) (emphasis added).  Memmer fails to cite the next page of Novosel's deposition, in which states he was later informed that there is a "boundary or buffer zone of 20 to 40 feet around the building in which you are not allowed to smoke or use a cell phone." (Novosel Depo, at 84).  Therefore, the only evidence to support Memmer's contention that she was not smoking or using her cell phone in an unauthorized area is her own deposition testimony.

Memmer also alleges that other employees at Indalex committed similar safety violations, but did not get discharged.  Again, the only support that Memmer has for this assertion is her own deposition testimony, and that testimony is equivocal at best.  For example, in her memorandum in opposition, Memmer states that her "own sworn testimony establishes that other employees of Defendant engaged in the same alleged misconduct as she did, but were not disciplined."  to (Memmer Depo, at 71, 72, 85, 86, 89, 90).  However, an examination of the deposition testimony cited by Memmer reveals that she is merely speculating as to whether other employees committed similar safety violations:

> Q: But no foreman saw [employee Larry Kegley] smoking in the paint area, correct?
> A: Well, I'm sure they have seen him. That's hearsay to me.
> Q: So you don't know if a foreman or other member of management saw Larry Kegley smoking in the paint area?

14

A.  No, I would say no.

(Memmer Depo, at 90).

In the instant case, Indalex has articulated legitimate, non-discriminatory reasons–violations of safety regulations– for terminating Memmer.  Indalex points out that the Sixth Circuit has adopted the "honest belief rule," which means that an employer's proffered, non-discriminatory reason for termination is considered honestly held where the employer can establish it reasonably relied on particularized facts that were before it at the time the decision was made."  Smith v. Chryler Corp., 155 F.3d 799, 805-806 (6th Cir. 1998).  Moreover, "in deciding whether an employer reasonably relied on the particularized facts then before it, we do not require that the decisional process used by the employer be optimal or that it left no stone unturned.  Rather, the key inquiry is whether the employer made a reasonably informed and considered decision before taking an adverse employment action."  Id., at 807.  The Smith court also found that "an employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question."  Id.

Here, Indalex conducted its own internal investigation before terminating Memmer for violating safety regulations.  (Callihan, Aff. at ¶ 3).  After Michael observed Memmer smoking and using a cell phone in a restricted area, Michael consulted with his supervisor, Callihan.  Callihan then conducted an internal investigation, which included further discussion with Michael and a review of various

15

company policies.  (Callihan, at ¶ 3).  Based on his investigation, Callihan concluded that the evidence supported his decision to terminate Memmer.  (Callihan, at ¶ 3). Memmer then instituted a grievance process, and held a meeting with Memmer, Rueschman, and union president Novosel.  Memmer alleges that Rueschman made a comment regarding Memmer's FMLA leave, but Novosel testified that nothing was discussed at the meeting beyond the scope of Memmer's safety violations.  (Novosel Depo. at 38-39).  After the meeting, Indalex offered Memmer a LCA on July 13, 2005, but she declined the offer.  (Memmer Depo, at 331-333).

Consequently, the record yields ample and uncontroverted evidence that the Defendant did not retaliate against the Plaintiff.  For instance, it is well-settled that an employer's willingness to cooperate with an employee's prior requests for medical leave adds bolsters the legitimacy of the employer's proffered reason.  See Skrjanc, 272 F.3d at 315.  In the case at bar, it is undisputed that the Indalex repeatedly granted Memmer medical leave upon request and without hesitation.  Memmer has failed to demonstrate any factors that tend to demonstrate intentional retaliatory conduct.  Thus, the strength of the Defendant's legitimate, non-discriminatory reason, coupled with the Plaintiff's failure to proffer any evidence demonstrating pretext, compels the conclusion that no reasonable jury could find in favor of the Plaintiff.

### B.    Worker's Compensation Retaliation

Memmer also asserts that Indalex unlawfully retaliated against her for filing a

workers's compensation claim.  In order to show a *prima facie* case for retaliatory discharge under Ohio law, a plaintiff must demonstrate that she suffered a work-related injury, that she filed a claim for workers' compensation, and that the employer discharged her in violation of Ohio Revised Code section 4123.90.[6]  See  Kilbarger v. Anchor Hockin Glass Co., 120 Ohio App.3d 332, 337-38, 697 N.E.2d 1080, 1083 (1997).  The burden then shifts to the employer to show a legitimate, non-discriminatory reason for the discharge.  Then, the burden shifts back to the plaintiff to establish that the reason for discharge was pretextual and that the real reason for the discharge was the employee's protected conduct, his filing of a workers' compensation claim.  Id. at 338, 697 N.E.2d at 1083-84.  "The scope of the cause of action created by the statute is very limited, and the burden of proof is upon the employee to specifically show that the termination was in direct response to the filing of a claim."  See Metheney v. Sajar Plastics, Inc., 69 Ohio App.3d 428, 432, 590 N.E.2d 1311, 1314 (1990).  Further, "the employee's evidence must do more than raise an inference of an improper motive." Id. at 431, 590 N.E.2d at 1313.

Memmer asserts that she can make out a *prima facie* case of retaliation because

---

[6]    Ohio Revised Code section 4123.90 provides, "no employer shall discharge, demote, reassign, or take any punitive action against any employee because such employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer."

she was "injured on the job, she filed a worker's compensation claim, and she was discharged." (Pl.'s Mem. in Opp'n at 11).  Again, the sole piece of evidence Memmer relies upon to support her *prima facie* case is her own allegation that Reuschman stated, *after* Memmer was terminated, "I don't like the fact that you are on FMLA." (Memmer Depo, at 39).  Even assuming this statement is true, Indalex has rebutted Memmer's *prima facie* case by demonstrating a legitimate nondiscriminatory reason for discharge by submitting evidence that it discharged Memmer because she violated Indalex's safety policy.

Memmer, in turn, claims that Indalex's reason for discharge was pretextual because Indalex cannot corroborate her alleged safety violations.  As discussed earlier with respect to Memmer's FMLA retaliation claim, the Sixth Circuit has adopted the "honest belief rule," which means that an employer's proffered, non-discriminatory reason for termination is considered honestly held where the employer can establish it reasonably relied on particularized facts that were before it at the time the decision was made."  Smith v. Chrysler Corp., 155 F.3d 799, 805-806 (6th Cir. 1998).  Thus, even if Indaelx was incorrect in its finding that Memmer violated safety regulations, this error does not constitute evidence of pretext because Indalex's reason for discharging Memmer was based on a reasonable and honest belief that Plaintiff was guilty of safety violations.

Indalex has put forth evidence that Indalex reasonably relied on particularized

18

facts when it terminated Memmer.  Operations Manager, Callihan, conducted an internal investigation of Memmer's alleged safety violation.  Callihan spoke with Michael about Memmer's safety violations, and Michael testified in his deposition that he say Memmer smoking and using her cell phone in a prohibited area. (Michael, Depo., at 28).  Callihan also verified that two of Memmer's supervisors, Jame Byrd and Dave Szimmerschied, confirmed Michael's report.  (Michael Depo., at 22, 26-27).

Indalex also points out that Memmer was not terminated more than seven years after she submitted her original  workers' compensation claim.  Memmer injured her back on the job on July 2, 1998 and filed a claim for workers' compensation claim. Memmer testified that no Indalex employees or members of management showed hostility towards her because of her worker's compensation claim. (Memmer Depo, at 44).  To the contrary, Memmer did not receive any negative performance report until nearly three years after she filed her claim. (Memmer Depo, at Ex. K).  The record also indicates that Memmer was promoted twice and received three pay increases subsequent to filing her claim, with the most recent promotion occurring eight months prior to her termination.  (Memmer Depo, at 26).

"The ultimate question in every employment discrimination case involving a claim of [retaliation] is whether the plaintiff was the victim of intentional discrimination."  See Reeves, 530 U.S. at 153.  Here, the record is devoid of any evidence demonstrating that the Defendant terminated the Plaintiff's employment in

unlawful retaliation for the Plaintiff requesting to take protected medical leave.  Indeed, the sole conclusion to be drawn from the record is that the Defendant terminated the Plaintiff's employment as a result of the Plaintiff's safety violations on July 11, 2005. The Plaintiff has failed to challenge the Defendant's affirmative evidence in any manner, much less to present any evidence tending to demonstrate pretext.

## IV.  CONCLUSION

Accordingly, the Court hereby orders that the Defendant's Motion for Summary Judgment (Dkt. # 31) is **GRANTED**.  Therefore, Defendants is entitled to judgment on both remaining counts of the Complaint

**IT IS SO ORDERED.**

*/s/ Peter C. Economus* – **02/12/07**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**

20